ROBERT S. BREWER, JR.
United States Attorney
NICOLE E. BREDARIOL
Special Assistant United States Attorney
Massachusetts Bar No. 696484
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546- 8914
Email: Nicole.bredariol@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 20-CR-2838-AJB |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| ANDRES FERNANDO TUFINO CHILA (1), aka "Andres Fernando Tufio Chila," | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Robert S. Brewer, Jr., United States Attorney, Nicole Bredariol, Special Assistant United States Attorney, and Defendant ANDRES FERNANDO TUFINO CHILA, with the advice and consent of Jeremy Warren, counsel for Defendant, as follows:

//
//
//
//
//
//
//
//

# I

## THE PLEA

Defendant agrees to plead guilty to Count 1 of the Indictment in the above case charging defendant with:

> Beginning at a date unknown to the grand jury and continuing to on or about September 6, 2020, on board a vessel subject to the jurisdiction of the United States, while on the high seas, defendants ANDRES FERNANDO TUFIÑO CHILA, EDUARDO MAURICIO QUIÑONEZ BRAVO, HUGO AQUILES LEON TUFIÑO, JUAN MANUEL HERNANDEZ ESPINO, ANAIN AYALA TORRES, and RAMON ALBERTO MARTINEZ TOSANO, did knowingly and intentionally conspire together and with each other and with other persons unknown to the grand jury to distribute 5 kilograms and more, to wit: approximately 1,073 kilograms (2,360.6 pounds) of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance; in violation of Title 46, United States Code, Sections 70503 and 70506(b).

In exchange for defendant's guilty plea and sentencing on Count 1 of the Indictment and provided defendant complies fully with all the terms in this plea agreement, the Government agrees to (1) move to dismiss Count 2 without prejudice when Defendant is sentenced, and (2) not prosecute Defendant thereafter on such dismissed charge unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply.

Defendant agrees that, following entry of Defendant's guilty plea, the Government need not hold or preserve any evidence seized in connection with this case. If the court has issued a preservation order in connection with any seized evidence, Defendant will request that the Court lift or revoke the preservation order following entry of Defendant's guilty plea.

Defendant agrees to waive any potential argument that venue in the Southern District of California is not proper.

This plea agreement is part of a "package" disposition as set forth in Section VI.E below. In order for defendant to receive the benefit of this agreement, codefendants EDUARDO MAURICIO QUIÑONEZ BRAVO and HUGO AQUILES LEON TUFIÑO, also must plead guilty at the same time. See Section VI.E below.

## II

## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1. There was an agreement between two or more persons to distribute cocaine while on board a vessel subject to the jurisdiction of the United States;

2. Defendant became a member of the conspiracy knowing of its purpose to distribute cocaine and intending to help accomplish that purpose.

In addition, although not elements, the Government would have to prove the following beyond a reasonable doubt:

1. That the collective weight of the cocaine that was within the scope of defendant's agreement, and that was reasonably foreseeable to defendant, was 5 kilograms and more, to wit: approximately 1,073 kilograms.

//
//
//

B. <u>ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS</u>

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. In August 2020, defendant ANDRES FERNANDO TUFIÑO CHILA entered into an agreement with others, including his co-defendants EDUARDO MAURICIO QUIÑONEZ BRAVO and HUGO AQUILES LEON TUFIÑO to transport and distribute bulk cocaine from ~~Colombia~~ Ecuador to Mexico, on board a go-fast vessel.

2. Defendant joined in this agreement, knowing of its purpose, and intending to help accomplish that purpose.

3. As part of and in furtherance of this agreement, Defendant did the following:

    a. In August 2020, Defendant and co-defendants EDUARDO MAURICIO QUIÑONEZ BRAVO and HUGO AQUILES LEON TUFIÑO agreed to be part of the crew of a Go Fast Vessel that was going to leave from Ecuador ~~Colombia~~ and smuggle cocaine from ~~Colombia~~ Ecuador to Mexico ("Go Fast Vessel 1").

    b. In September 2020, Defendant and his co-defendants EDUARDO MAURICIO QUIÑONEZ BRAVO and HUGO AQUILES LEON TUFIÑO departed from ~~Colombia~~ Ecuador on Go Fast Vessel 1 carrying approximately 1,073 kilograms of cocaine in a false bottom of the vessel.

c. Defendants on Go Fast Vessel 1 - ANDRES FERNANDO TUFIÑO CHILA, EDUARDO MAURICIO QUIÑONEZ BRAVO, and HUGO AQUILES LEON TUFIÑO, traveled for several days and planned to rendezvous with another Go Fast Vessel on or about September 6, 2020. Defendants were given coordinates for this rendezvous and were interdicted near the rendezvous location shortly after telling co-conspirators that they had arrived at the rendezvous location. Prior to reaching the rendezvous location on or about September 6, 2020, Defendants had not met with the intended rendezvous go fast vessel for the at sea drug transfer.

d. Defendants on Go Fast Vessel 1 - ANDRES FERNANDO TUFIÑO CHILA, EDUARDO MAURICIO QUIÑONEZ BRAVO, and HUGO AQUILES LEON TUFIÑO, were told that they would meet Mexican co-conspirators and would be transported to Mexico to further distribute the cocaine.

e. Go Fast Vessel 1 did not have any tools on board to break open the false bottom of the vessel and retrieve the cocaine. Instead, ANDRES FERNANDO TUFIÑO CHILA, EDUARDO MAURICIO QUIÑONEZ BRAVO, and HUGO AQUILES LEON TUFIÑO, were told that the people on the rendezvous go fast vessel would bring the tools necessary to access the cocaine and extract the drugs from the false bottom.

    f. Co-defendants JUAN MANUEL HERNANDEZ ESPINO, ANAIN AYALA TORRES, and RAMON ALBERTO MARTINEZ TOSANO were interdicted on a Go Fast Vessel (Go Fast Vessel 2") near this rendezvous location. They departed from Mexico and were carrying the tools required to access the cocaine hidden under the false bottom on Go Fast Vessel 1.

    g. The rendezvous was thwarted by the United States Coast Guard which interdicted Go Fast Vessel 1 and Go Fast Vessel 2 prior to the two vessels being able to meet to transfer the cocaine.

    h. In furtherance of the conspiracy the co-defendants on Go Fast Vessel 2, JUAN MANUEL HERNANDEZ ESPINO, ANAIN AYALA TORRES, and RAMON ALBERTO MARTINEZ TOSANO, had the tools necessary to remove the cocaine from the false bottom on Go Fast Vessel 1 and transfer it to their vessel.

    i. Had the defendants successfully rendezvoused with the other go fast vessel they planned to transfer both the cocaine and all defendants and continue to Mexico where they would further distribute the cocaine.

4. Defendant agrees that the United States could prove beyond a reasonable doubt at trial that a verbal claim of Ecuadorian registry or nationality was made by the master of Go Fast Vessel 1 and a verbal claim of Mexican registry or nationality was made by the master of Go Fast Vessel 2 and that Ecuador and Mexico could neither

confirm nor deny the claim of registry or nationality for the respective vessel, thus rendering both the vessels, Go Fast Vessel 1 and Go Fast Vessel 2, without nationality and subject to the jurisdiction of the United States.

5. Defendant agrees that the United States can prove beyond a reasonable doubt that the quantities attributable to defendant, that were within the scope of defendant's agreement, and that were reasonably foreseeable to defendant, were at least 1,073 kilograms of cocaine, a Schedule II controlled substance.

### III

### **PENALTIES**

The crime to which Defendant is pleading guilty carries the following penalties:

A. a maximum life in prison and a mandatory minimum 10 years;
B. a maximum $10,000,000 fine;
C. a mandatory special assessment of $100 per count; and
D. a term of supervised release of at least 5 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release.

//
//
//
//

IV

**DEFENDANT'S WAIVER OF TRIAL RIGHTS AND
UNDERSTANDING OF CONSEQUENCES**

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

V

**DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE
PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION**

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

E. The disposition contemplated by this agreement is part of a "package" disposition with codefendant(s) EDUARDO MAURICIO QUIÑONEZ BRAVO and HUGO AQUILES LEON TUFIÑO. If any defendant in the package fails to perform or breaches any part of their agreement, no defendant can withdraw their guilty plea, but

the Government is relieved from and not bound by any terms in any agreements in the package.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

### SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

**X**

**PARTIES' SENTENCING RECOMMENDATIONS**

A.   SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

```
1.   Base Offense Level [§ 2D1.1(c)(1)]              38
2.   Safety Valve [§ 2D1.1(b)(18)]                   -2*
3.   Acceptance of Responsibility [§ 3E1.1]          -3
                                           Total     33
```

**\*If defendant truthfully discloses to the government all information and evidence the defendant has concerning the offense and relevant conduct, and if defendant otherwise qualifies for the "safety valve" in § 5C1.2, the government will recommend a two-level reduction under § 2D1.1(b)(18), and relief from any statutory mandatory minimum sentence pursuant to § 5C1.2. Defendant understands that if he does not qualify**

for § 5C1.2, defendant may be subject to a statutory mandatory minimum sentence.

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A. above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

1. Except as described in paragraph C2, Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

2. The defendant may not seek any additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553 based on the defendant's transportation or detention before his initial appearance in the Southern District of California. This includes, but is not limited to, arguments based on the conditions of

detention while at sea or the amount of time detained at sea before the initial appearance.

D. **NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The parties have **no** agreement as to Defendant's Criminal History Category.

E. **"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION**

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. **PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

If Defendant qualifies for Safety Valve the Government will recommend Defendant be sentenced to 84 months imprisonment. If Defendant does not qualify for Safety Valve the Government will recommend the applicable statutory mandatory minimum sentence.

G. **SPECIAL ASSESSMENT/FINE**

1. **Special Assessment**

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. **Fine**

The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program,

likely would exceed the amounts that could reasonably be expected to be collected.

### H. SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

## XI

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. The only exceptions are Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel. If Defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

## XII

### BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native

language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

### XVI

### DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

3/2/2021
DATED

ROBERT S. BREWER, JR.
United States Attorney

*Nicole Bredariol*
NICOLE BREDARIOL
Special Assistant U.S. Attorney

2/25/21
DATED

JEREMY WARREN
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

2/25/2021
DATED

ANDRES FERNANDO TUFIÑO CHILA
Defendant

Approved By:

*Victor P. White*
VICTOR WHITE
Assistant U.S. Attorney

17

Def. Initials _____
20-CR-2838-AJB